IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK WAYNE LOMAX,<br>TDCJ #1170669,<br><br>Petitioner,<br><br>v.<br><br>RICK THALER, Director,<br>Texas Department of Criminal Justice -<br>Correctional Institutions Division,<br><br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-09-0705 |

## MEMORANDUM AND ORDER

The petitioner, Mark Wayne Lomax (TDCJ #1170669), is incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). Lomax seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state-court conviction for felony murder. The respondent has answered with a motion for summary judgment, arguing that as a matter of law, Lomax is not entitled to relief under § 2254. (Docket Entry No. 11). Lomax has replied, (Docket Entry No. 19), and moved for leave to amend his petition, for an evidentiary hearing, and for a continuance to conduct discovery, (Docket Entry Nos. 21, 23, 24). After considering the pleadings, the motions and responses, the record, and the applicable law, this court grants the respondent's motion, and denies Lomax's motions. Final judgment is entered by separate order. The reasons for these rulings are set out below.

## I.      Background

Lomax was indicted for felony murder for his involvement in a collision that killed a 5-year-old in the vehicle Lomax hit. Under Texas law, a person commits felony murder if he "commits or

attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(3). The indictment alleged that, in the course and in furtherance of committing a third driving-while-intoxicated offense, a felony, Lomax committed "an act clearly dangerous to human life" by operating his motor vehicle at an unreasonable speed, failing to maintain a proper lookout for traffic and road conditions, and failing to take evasive actions before striking a motor vehicle, which caused the death of a 5-year-old girl. The indictment alleged, for the purpose of enhancing punishment, that Lomax had at least two prior DWI convictions and prior convictions for unauthorized use of a motor vehicle.

At trial, the prosecution presented evidence showing that, at approximately 7:50 p.m. on March 23, 2002, Lomax was driving a Ford Explorer when he struck a Chevrolet Suburban driven by Ingrid Castillo. A witness, Elaine Torres, observed Lomax tailgating other vehicles, speeding, and weaving in and out of traffic on a crowded public street before crashing into Castillo's vehicle. Castillo's 5-year-old daughter, Alexia, was a passenger in her mother's vehicle. Alexia was severely injured in the wreck. She was taken by Life Flight to the trauma center at Memorial Hermann Hospital in Houston. She died that night.

Lomax was taken by ambulance to the Hermann Hospital trauma center after he complained that he could not feel his legs. Numerous witnesses who came into contact with Lomax that night testified that he was belligerent, his eyes were bloodshot, his speech was slurred, and his breath smelled strongly of alcohol. Multiple witnesses testified that, based on their experience with intoxicated individuals and their personal observations of Lomax's behavior, Lomax was intoxicated

on the night of the wreck. Officers recovered a 375 milliliter bottle of vodka from under the driver's seat of the Ford Explorer that Lomax had been driving. The bottle was about three-quarters empty. A blood test done at Memorial Hermann Hospital showed that at 9:20 p.m. – about an hour and a half after the wreck – Lomax's blood alcohol concentration was 0.277. That is over three times the 0.08 limit for intoxication in Texas.[1] Lomax pulled out his catheter and fled from the hospital sometime after his blood was drawn. At trial, an expert in toxicology, Dr. Amitava Dasgupta, testified about the blood test. Another toxicologist, Terry Danielson, opined that, based on the blood-test result, certain physical characteristics, and the accounts of his behavior on the night at issue, Lomax's blood alcohol level was well over the legal limit of 0.08, making him intoxicated when he caused the wreck. Because Lomax had multiple prior convictions for DWI, his actions constituted a felony offense under Texas law.[2]

A jury in the 232nd District Court of Harris County, Texas, found Lomax guilty of felony murder as charged in the indictment. During the punishment phase, Lomax stipulated that he had numerous prior felony convictions for unauthorized use of a motor vehicle and for DWI. After finding the enhancement allegations to be true, the same jury sentenced Lomax to serve 55 years in prison.

---

[1] A person commits the offense of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a). "Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" or "having an alcohol concentration of 0.08 or more." TEX. PENAL CODE § 49.01(2).

[2] Subject to certain exceptions, a conviction for DWI is punishable as a Class B misdemeanor. TEX. PENAL CODE § 49.04(b). In some circumstances, including when a defendant has at least two prior convictions for DWI, a conviction for DWI is punishable as a felony. TEX. PENAL CODE § 49.09(b).

On direct appeal, Lomax argued that the trial court erred by denying his motion to quash the indictment and by admitting the State's evidence of his blood alcohol concentration. Lomax argued that the evidence was legally and factually insufficient to show that he had committed an act clearly dangerous to human life or that he caused the victim's death. The Texas Court of Appeals rejected Lomax's arguments and affirmed the conviction in an unpublished opinion. *See Lomax v. State*, No. 10-03-00156-CR, 2006 WL 871723 (Tex. App. — Waco March 29, 2006).

Lomax petitioned for discretionary review before the Texas Court of Criminal Appeals, raising two issues: (1) whether a felony murder conviction could be based on a felony DWI charge, which does not require a culpable mental state or *mens rea*; and (2) whether the trial court erred by admitting evidence of his blood alcohol concentration. The Texas Court of Criminal Appeals granted review on the first issue. The court held that under the felony murder statute, a felony DWI can serve as the underlying offense. *Lomax v. State*, 233 S.W.3d 302 (Tex. Crim. App. 2007). The Court of Criminal Appeals upheld the validity of the felony murder statute as applied to Lomax and affirmed the conviction.

Lomax filed an application for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. Lomax presented approximately 18 issues, challenging the trial court's evidentiary rulings, the sufficiency of the evidence, the reliability of the blood-test results, and the validity of the felony murder charge. Lomax also argued that the prosecution withheld favorable evidence, that the appellate record was deficient, and that he was denied effective assistance of counsel. The state habeas corpus court entered detailed findings of fact, concluding that many of Lomax's claims were barred from collateral review for procedural reasons and that Lomax was not otherwise entitled to relief. The Texas Court of Criminal Appeals agreed and denied relief, without

4

a written order, based on the findings of the state habeas corpus court.  *See ex parte Lomax*, No. 70,589-02 (Oct. 3, 2008).[3]

Lomax now seeks a federal writ of habeas corpus, challenging his state court conviction under 28 U.S.C. § 2254.  In this federal petition, Lomax raises the following claims:  (1) the Texas felony murder statute is unconstitutional; (2) the trial court erred by admitting unreliable evidence of his blood alcohol concentration; (3) the prosecution withheld evidence that was favorable to the defense; (4) he was denied an "effective appeal" because his appellate record was incomplete; and (5) he was denied effective assistance of counsel at his trial and on direct appeal.[4]  The respondent contends that Lomax is not entitled to relief under the federal habeas corpus standard of review and that the petition must be denied because his claims fail as a matter of law.  The parties' contentions are addressed below.

## II.    The Standard of Review

Federal habeas corpus proceedings filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254(d).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Section 2254(d) establishes a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

---

[3]  The record reflects that Lomax also filed a state habeas corpus application to challenge one of his felony convictions for unauthorized use of a motor vehicle.  The Texas Court of Criminal Appeals dismissed that application on September 17, 2008.  *See ex parte Lomax*, No. 70,589-01.

[4]  The claims are set forth in an amended petition and memorandum.  (Docket Entry Nos. 5, 6).  This court has reordered the claims for ease of analysis.

For claims adjudicated on the merits, § 2254(d) provides that a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an "unreasonable" application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

A state court's findings and conclusions are entitled to deference on federal habeas review unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008). A state court's findings of fact are presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact but

also to the implicit findings of the state court. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

Section 2254 requires a state court petitioner first to present his claims in state court, exhausting all state-court remedies through proper adjudication. *See* 28 U.S.C. § 2254(b). "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court." *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008). If a claim has not been presented in state court and adjudicated in a proper manner, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law ground. *Cone v. Bell*, — U.S. —, 129 S. Ct. 1769, 1780 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). The doctrine of procedural default prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his claims. *See Cone*, — U.S. —, 129 S. Ct. at 1780 (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman*, 501 U.S. at 732).

## III.   Analysis

### A.   The Texas Felony Murder Statute

Lomax was charged with felony murder for causing Alexia Castillo's death during the course of committing a third DWI. The Texas Penal Code makes a third DWI a felony. TEX. PENAL CODE § 49.09(b). Lomax argues that the Texas felony murder statute, § 19.02(b)(3) of the Texas Penal Code, is unconstitutional "on its face and when applied to [him]," because it did not require the

prosecution to prove beyond a reasonable doubt that he acted with a culpable mental state or *mens rea*.  Lomax argues further that he should have been charged, if at all, with "intoxication manslaughter," not felony murder.

Lomax presented this issue on direct appeal.  Lomax's arguments that the Texas felony murder statute is unconstitutional as applied to the facts of his case were rejected by the intermediate court of appeals and the Texas Court of Criminal Appeals, which issued a lengthy published opinion. In that decision, the Texas Court of Criminal Appeals upheld the Texas felony murder statute as applied to Lomax after finding a "clear legislative intent" to dispense with a culpable mental state for "murder" as defined by that statute.  *Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007) (citing TEX. PENAL CODE § 19.02(b)(3) and *Aguirre v. State*, 22 S.W.3d 463, 470 (Tex. Crim. App. 1999)).  The Texas Court of Criminal Appeals expressly rejected Lomax's argument that felony DWI, which has no independent *mens rea* requirement, cannot serve as the underlying felony for a felony murder conviction.  *See id.* at 307-08.  After summarizing a series of amendments by the Texas Legislature, the Court of Criminal Appeals rejected Lomax's contention that Texas law requires all "DWI homicides" to be prosecuted "exclusively under the DWI version of involuntary manslaughter[.]"[5]  *Id.* at 309.  In affirming the conviction, the Texas Court of Criminal Appeals also rejected Lomax's related argument that felony DWI was "a lesser included offense of intoxication manslaughter" and therefore could not be the basis of a felony murder prosecution.  *Id.* at 310-11.

To the extent Lomax challenges the validity of a state law, the record confirms that the state courts have rejected his arguments and affirmed his conviction under the Texas felony murder

---

[5]  A person commits the offense of intoxication manslaughter in Texas if he "operates a motor vehicle in a public place" and "is intoxicated and by reason of that intoxication causes the death of another by accident or mistake."  TEX. PENAL CODE § 49.08(a).

8

statute.  It is not the function of a federal habeas corpus court "to review a state's interpretation of its own law." *Weeks v. Scott*, 55 F.3d 1059, 1063 (citing *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983)).  This court must defer to the Texas Court of Criminal Appeals on its interpretation of Texas law.  *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) ("We will take the word of the highest court on criminal matters of Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law.") (quoting *Seaton v. Procunier*, 750 F.2d 366, 368 (5th Cir. 1985)).  It is well established that "federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Lomax does not cite authority showing that the Texas felony murder statute violates a federal constitutional provision.   Lomax fails to show that his conviction for felony murder is unconstitutional because the charged offense lacked an element of culpable criminal intent or *mens rea*.  The Supreme Court "has never articulated a general constitutional doctrine of *mens rea*" and has never held a state criminal statute unconstitutional for lack of *scienter*.  *Powell v. Texas*, 392 U.S. 514, 535 (1968) (footnote omitted); *see also Montana v. Egelhoff*, 518 U.S. 37, 56 (1996) ("The doctrines of *actus reus*, *mens rea*, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man.  This process of adjustment has always been thought to be the province of the States."); *Lambert v. California*, 355 U.S. 225, 228 (1957) ("We do not go with Blackstone in saying that a 'vicious will' is necessary to constitute a crime . . . for conduct alone without regard to the intent of the doer is often sufficient.  There is wide latitude in the lawmakers to declare an offense and to

exclude elements of knowledge and diligence from its definition."); *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 70 (1910) ("[P]ublic policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.").

The absence of *scienter* does not render a statute invalid if there is some indication of legislative intent, express or implied, to dispense with *mens rea* as an element of a crime. *United States v. Staples*, 511 U.S. 600, 605 (1994) (citations omitted). In Lomax's case, the Texas Court of Criminal Appeals noted that, in enacting the Texas felony murder statute found at § 19.02(b)(3) of the Texas Penal Code, there was "clear legislative intent to plainly dispense with a culpable mental state." *Lomax*, 233 S.W.3d at 305 (citing *Aguirre v. State*, 22 S.W.3d 463, 472-76 (Tex. Crim. App. 1999)). The Texas court observed that "the plain language of § 19.02(b)(3) also does not exclude felony DWI as an underlying felony for a felony-murder prosecution[.]" *Id.* at 309. The Texas Court of Criminal Appeals held that felony DWI, which also does not require proof of a culpable mental state, may serve as the underlying felony in a felony murder prosecution. *Id.* at 309. The court recently reaffirmed the ruling that a felony DWI may serve as the underlying offense in a felony murder conviction. *See Bigon v. State*, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008). Lomax cites no authority holding that felony murder cannot be charged in this manner or that his conviction is invalid for lack of the requisite *mens rea*. To the extent that Lomax's argument implicates a new rule, the retroactivity doctrine announced in *Teague v. Lane*, 489 U.S. 288 (1989) bars relief on collateral review.[6]  Lomax has not shown that the state court's decision to reject his

---

[6] The statutes governing federal habeas corpus review of state court convictions, as amended by the AEDPA, also preclude relief for claims adjudicated on the merits unless the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Lomax does not otherwise demonstrate that the statute at issue is constitutionally invalid, either facially or as applied to the facts of his case. Lomax is not entitled to relief on this issue.

### B.    The Trial Court's Evidentiary Rulings

Lomax contends that the trial court erred by admitting into evidence the results of the blood test taken less than two hours after the car wreck. The results showed that his blood alcohol concentration far exceeded the legal limit of "intoxication." Lomax complains that the blood test results were not sufficiently reliable because a second test was not done to confirm the blood alcohol concentration. Lomax complains further that the trial court erred by admitting testimony at trial using the evidence to estimate the level of his intoxication at the time of the wreck.

The respondent correctly observes that Lomax's claims, which are limited to the admissibility of evidence under state law, are not cognizable on federal habeas corpus review. The Fifth Circuit has made clear that federal habeas corpus courts "do not review state courts' application of state evidence law." *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010) (citing *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998); *Mercado v. Massey*, 536 F.2d 107, 108 (5th Cir. 1976)); *see also Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) ("In habeas actions, this court does not sit to review the mere admissibility of evidence under state law."). A federal habeas corpus court will not grant relief from errors in a state trial court's evidentiary rulings, if any, unless those errors resulted

---

United States. 28 U.S.C. § 2254(d)(1). This portion of the AEDPA codifies the rule in *Teague* to the extent that it requires a federal habeas corpus court to deny relief that is contingent upon a rule of law not "clearly established" at the time the challenged state court conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 380 (2000) (Stevens, J.). Accordingly, § 2254(d)(1) would seem to bar habeas corpus relief where a petitioner relies on the retroactive application of a new rule of law. *See Williams v. Cain*, 229 F.3d 468, 475 (5th Cir. 2000); *Caldwell v. Johnson*, 226 F.3d 367, 374 (5th Cir. 2000).

in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)). Lomax does not establish that his trial was tainted by fundamental error in this case.

The testimony about Lomax's blood alcohol concentration was admitted at trial only after a lengthy pretrial hearing on his motion to suppress the evidence. At the outset of that hearing, the prosecutor noted that the wreck had occurred at approximately 7:50 p.m on March 23, 2002, and that a nurse at Memorial Hermann Hospital withdrew a tube of Lomax's blood for analysis at around 9:20 p.m. that same night. The test results showed that Lomax's blood alcohol concentration was 0.277. That is more than three times the legal limit in Texas. *See* TEX. PENAL CODE § 49.01(1)(B) (defining intoxication to include "having an alcohol concentration of .08 or more").

To show that the test results were scientifically reliable, the prosecutor presented testimony from Dr. Amitava Dasgupta. He has a Ph.D. in toxicology with board certification in toxicology and chemistry, and is a professor in the Department of Pathology and Laboratory Medicine at the University of Texas Medical Center in Houston. He also supervises the clinical toxicology laboratory of Memorial Hermann Hospital.[7] *See Court Reporter's Record*, vol. 4, at 5. Dr. Dasgupta described the laboratory that performs blood testing at Memorial Hermann Hospital, the security procedures used, the certification requirements for the laboratory, and the rigorous standards required for the instruments used to analyze blood specimens. *See id.* at 5-28. Dr. Dasgupta noted that the toxicology laboratory at Memorial Hermann Hospital uses an AXSYM instrument and a scientific process ("Enzymatic Doxination") that is the "most widely used" method to analyze blood alcohol

---

[7] Memorial Hermann Hospital is a teaching hospital with an accredited Level One trauma center. *Court Reporter's Record*, vol. 4, at 12. As a Level One trauma center, the hospital treats "very difficult injuries" on an emergency basis for critically wounded patients who could die if they were sent elsewhere. *Id.*

in the world. *Id*. at 18, 19. He testified further that scientific process is "widely accepted" in the scientific and medical community as a technique for analyzing blood for ethanol alcohol. *Id.* at 19. Dr. Dasgupta added that Memorial Hermann Hospital uses this "state-of-the art technique" to ensure "superior quality" for its patients. *Id.* at 20. He emphasized the reliability of this testing procedure, explaining that it is "very important" to obtain valid test results when drug or alcohol intoxication is a factor to ensure proper diagnosis and patient care. *Id.* at 27-28.

During cross-examination, Dr. Dasgupta conceded that only one test was done on the blood sample taken from Lomax. *See id*. at 56-58. Dr. Dasgupta explained that a second test is not required to confirm a clinical test result showing the presence of alcohol in the blood. *See id*. at 58-59, 63-64. During this testimony, Dr. Dasgupta insisted that, unlike the analysis done to screen for "abusive drugs" or "drugs of abuse," which require a second test to confirm the identity of the particular substance, there is no protocol that requires a second test to confirm the presence of alcohol. *See id*. Dr. Dasgupta's testimony on this issue is supported by the medical records in evidence. The form containing Lomax's toxicology report features separate sections, one detailing Lomax's 0.277 blood alcohol level and the other showing that he tested "negative" for "drugs of abuse," such as amphetamines, barbiturates, benzodiazepines, cocaine, opiates, or marijuana. (*Court Reporter's Record*, vol 12, State's Exhibit 1). The form noted that with respect to screening for the drugs, any positive report could be "confirmed by a second method" if ordered. (*Id.*). The form contains no such advisory for alcohol level, which was listed separately from the drugs.

Sheryl Peyton, a toxicologist formerly with the Texas Department of Public Safety, testified as an expert for the defense. *Court Reporter's Record*, vol. 4, at 71-72. Peyton explained that the standard method of testing blood in the "forensic community," which favors the "Gas

Chromatography" machine, requires a second test to confirm the results.[8] *Id.* at 72. On cross-examination, Peyton acknowledged that a second test could not have been done on Lomax because he fled the hospital shortly after the first test. *See id.* at 84. After hearing the testimony, the trial court overruled the motion to suppress the result of Lomax's blood test. *See id.* at 95.

Dr. Dasgupta repeated his testimony about the reliability of the testing procedures at trial. *See Court Reporter's Record*, vol. 8, at 169-220. During the trial, a toxicologist for the Harris County Medical Examiner's Office, Dr. Terry Danielson, testified about the blood-test results and other factors, including Lomax's weight, gender, age, and the signs of intoxication Lomax showed after the wreck. *See Court Reporter's Record*, vol. 9, at 26-30. Dr. Danielson did not attempt to estimate the specific level of Lomax's blood alcohol concentration at the time of the wreck. Instead, Dr. Danielson gave a general opinion based on the standard rate of absorption and elimination during the digestive process in a person with Lomax's characteristics. *See id.* at 17-30. In Dr. Danielson's opinion, Lomax was over the legal limit for alcohol concentration in Texas and therefore intoxicated when the car wreck occurred. *See id.* at 30.

On direct appeal, Lomax complained about the trial court's decision to admit the blood-test results and the toxicologist's testimony. The intermediate Texas appellate court held that the trial

---

[8] Peyton explained that, in a clinical laboratory such a the one at Hermann Hospital, "[the] goal is to produce results that are designed to assist the doctors in making judgments for the patients" whereas, in the forensic laboratory, "the goal is to get results that are for forensic purposes for criminal investigations . . . ." *Court Reporter's Record*, vol. 4, at 75. At trial, Dr. Dasgupta clarified that forensic laboratories are better suited to perform "detective work" because they are "more involved in the death investigation," while a clinical setting treats "people who are still alive." *Id*, vol. 8, at 184-85. Dr. Dasgupta emphasized that clinical test results must be as reliable as possible because they are used for treatment involving "life or death" decisions. *Id.* at 181.

court did not abuse its discretion in overruling Lomax's motion to suppress the blood-test evidence.

That court stated as follows:

> . . . In Lomax's sixth issue, he contends that the trial court erred in overruling Lomax's motion to suppress evidence of the analysis of his blood for blood alcohol concentration. "Generally, a trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard." *Dyar v. State*, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
>
> Lomax argues that expert evidence of his blood alcohol concentration was not reliable and should not have been admitted. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. "A trial court's ruling on the admissibility of scientific expert testimony is reviewed under an abuse of discretion standard." *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *accord Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).
>
> The proponent of scientific evidence must demonstrate to the trial court, by clear and convincing evidence, that the scientific evidence is reliable. The proponent of "hard" scientific knowledge must satisfy three criteria to demonstrate reliability: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and, (3) the technique was properly applied on the occasion in question. *Russeau*, at 881 (internal footnote omitted); *accord Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).
>
> Lomax argues that no second test confirmed his blood alcohol concentration. The State's expert testified expressly that no second test was necessary when testing for alcohol, and indeed, that there was no other testing method for testing blood alcohol concentration. The trial court did not abuse its discretion in overruling Lomax's motion to suppress the blood-test evidence. We overrule Lomax's sixth issue.

No. 10-03-00156-CR, 2006 WL 871723, at *6-7 (Tex. App. — Waco, March 29, 2006).

The Texas appellate court also held that the trial court did not abuse its discretion in

overruling Lomax's objection to the toxicologist's testimony about extrapolating the hospital test

results to the blood alcohol level at the time of the wreck.

> In Lomax's seventh issue, he contends that the trial court erred in overruling Lomax's objection to evidence concerning retrograde extrapolation. "Retrograde extrapolation is the computation back in time of the blood-alcohol level-that is, the estimation of the level at the time of driving based on a test result from some later time." *Mata v. State*, 46 S.W.3d 902, 908-909 (Tex. Crim. App. 2001).

> In this connection, Lomax quotes *Mata v. Texas*:

>> The court evaluating the reliability of a retrograde extrapolation should also consider (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.

> *See Mata*, 46 S.W.3d at 916. The *Mata* Court continues:

>> Obviously, not every single personal fact about the defendant must be known to the expert in order to produce an extrapolation with the appropriate level of reliability. As the Kentucky Supreme Court has recognized, if this were the case, no valid extrapolation could ever occur without the defendant's cooperation, since a number of facts

known only to the defendant are essential to the process.

> If the State had more than one test, each test a reasonable length of time apart, and the first test were conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's B[lood] [alcohol] [content] with limited knowledge of personal characteristics and behaviors. In contrast, a single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant. Somewhere in the middle might fall a case in which there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert.

*Mata*, 46 S.W.3d at 916-17 (citing *Commonwealth v. Wirth*, 936 S.W.2d 78, 84 (Ky. 1996)); *see id*. at 904.

> Lomax contends that the expert knew "with certainty" only three of the *Mata* factors: Lomax's weight and gender and Lomax's blood alcohol concentration at the time of the one blood test. Lomax concedes that the expert knew Lomax's age and the time of the test. The test took place about an hour and a half after the collision. Lomax also notes certain circumstantial evidence, such as what liquor and what amount Lomax drank, and that Lomax was a moderate to heavy drinker, which the expert concluded from hospital records and the arresting officer's report. Given that the expert knew the results of one test of Lomax's blood alcohol concentration a reasonable time from Lomax's driving and knew several of Lomax's relevant characteristics, the trial court did not abuse its discretion in overruling Lomax's objection to retrograde extrapolation evidence. We overrule Lomax's seventh issue.

*Lomax*, 2006 WL 871723, at *7-8.

The Texas Court of Criminal Appeals refused Lomax's petition for discretionary review.

Lomax insists that the state courts' decision to reject his claims is unreasonable under the Supreme

Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993). *Daubert* involved the admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence. *Daubert* does not apply here because Lomax's trial was governed by state evidentiary rules. *See, e.g., Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) (rejecting a habeas petitioner's challenge to the reliability of scientific evidence under *Daubert* because the *Daubert* decision concerned the Federal Rules of Evidence which are "not relevant" to "state evidentiary matters"). The Texas Rule of Evidence tracks the Federal Rule, but Lomax does not show that either his blood-test results or the extrapolation testimony were unreliable or that the trial court admitted this evidence in violation of that Texas law.[9] Nothing in the record shows that Lomax's trial was rendered unfair as a result of the trial court's evidentiary rulings. Absent a showing that his trial was rendered fundamentally unfair, Lomax does not demonstrate a federal constitutional violation or show that the state court's decision to deny relief was objectively unreasonable. Lomax is not entitled to a federal writ of habeas corpus on this issue.

### C.     The Claim that the Prosecution Withheld Favorable Evidence

Lomax complains that the prosecution violated his right to due process by withholding favorable evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In particular, Lomax contends that the prosecution withheld or suppressed a toxicology report for Ingrid Castillo, who was driving the Chevrolet Suburban that Lomax hit. Lomax appears to argue that such a report might

---

[9] Under Texas law, to the extent it is relevant to his habeas issue, the admissibility of testimony on scientific, technical, or other specialized knowledge is governed by Rule 702 of the Texas Rules of Evidence, which is similar to Federal Rule 702. Challenges to the admissibility of such evidence may be presented in a "gatekeeper hearing" on reliability, which is governed by *Kelly v. State*, 824 S.W.2d 658 (Tex. Crim. App. 1992). The criteria for reliability under *Kelly* is "substantively identical" to the criteria under *Daubert*. *Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998).

have shown that she was to blame for the accident that resulted in her daughter's death.  Lomax also

complains that he was denied access to certified reports for other accidents that occurred at the same

intersection where he hit Castillo's vehicle.

The record shows that these claims were rejected by the state habeas corpus court, which

found that Lomax "fail[ed] to demonstrate that the [s]tate withheld any favorable, material evidence

in violation of *Brady*." *Ex parte Lomax*, No. 70,589-02 at 175.  Lomax does not establish that he

is entitled to relief from the state court's decision.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the suppression

by the prosecution of evidence favorable to an accused "violates due process where the evidence is

material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  To

establish a *Brady* violation, a defendant must show that: (1) the evidence was favorable to the

defendant, either because it was exculpatory or because it has impeachment value; (2) the evidence

was withheld or suppressed by the prosecutor, either willfully or inadvertently, and (3) the evidence

was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Kyles v. Whitley*, 514 U.S. 419,

432-33 (1995).  Evidence is material under *Brady* when there is a "reasonable probability" that the

outcome of the trial would have been different if the suppressed evidence would have been disclosed

to the defendant. *See Wood v. Bartholomew*, 516 U.S. 1, 5 (1995); *United States v. Moore*, 452 F.3d

382, 387-88 (5th Cir. 2006).

Lomax cannot demonstrate that the prosecution withheld certified accident reports because

the record confirms that Lomax had access to this information.  Lomax's own counsel offered these

accident reports into evidence while cross-examining a Harris County Sheriff's Deputy, in

attempting to show that the wreck occurred at a dangerous intersection. *See Court Reporter's*

*Record*, vol. 8, at 269-70. The trial court ultimately sustained the prosecution's objection to this evidence and held that the reports were not "material." *Id.*, vol. 8, at 270. The reports are in the record and were in the possession of Lomax's lawyer. *See Court Reporter's Record*, vol. 14, Defendant's Exhibit 67). Because these records were available to the defense, Lomax fails to show a *Brady* violation.

With regard to the alleged toxicology report for Ingrid Castillo from the night of the wreck, the record does not show that one even existed. His conclusory allegations are insufficient to articulate a *Brady* violation. *See Hughes v. Johnson*, 191 F.3d 607, 629-30 (5th Cir. 1999) (observing that allegations that are merely "conclusionary" or based on pure speculation cannot support a *Brady* claim). Ingrid Castillo testified at trial that she had nothing alcoholic to drink on the day of the wreck and was not taking any medication that would have affected her ability to drive. *See Court Reporter's Record*, vol. 6, at 284. Lomax acknowledges that defense counsel had access to Ingrid Castillo's medical records before trial. Those records did not contain any evidence that would indicate intoxication on her part. The trial court authorized subpoenas or a "writ of attachment" to obtain Ingrid Castillo's toxicology report, "if there is any such thing," but Lomax's defense counsel did not did not request such an order. *Court Reporter's Record*, vol. 6, at 284. The record fails to show that the prosecution withheld such evidence. *See United States v. Infante*, 404 F.3d 376, 386 (5th Cir. 2005) ("*Brady* rights are not denied where the information was fully available to the defendant and his reason for not obtaining and presenting such information was his lack of reasonable diligence.").

Because Lomax has not shown that the prosecution suppressed favorable, material evidence at his trial, he also fails to show that the state habeas corpus court's decision to reject his claim was

contrary to or involved an unreasonable application of the Supreme Court's decision in *Brady*.
Lomax does not demonstrate that he is entitled to relief on this claim.

### D.     Incomplete Appellate Record

Lomax contends that he was denied an "effective appeal" because his appellate record was
incomplete. Lomax complains that the record did not include statements given to the police by
Ingrid Castillo and by Elaine Torres, who testified at trial that she saw Lomax driving erratically
before causing the wreck that resulted in Alexia Castillo's death. Lomax complains further that the
record also omitted the certified accident reports that were offered into evidence by the defense. *See*
*Court Reporter's Record*, vol. 8, at 269-70 (referring to Defendant's Exhibit 67). This claim is
without merit for reasons established during Lomax's direct appeal and state habeas review.[10]

The state court record shows that Lomax filed a motion during his direct appeal objecting that
the appellate record was incomplete or inaccurate because certain exhibits were missing or were
copied in a way that made them difficult to read. After considering Lomax's objections at length,
the intermediate court of appeals abated the appeal and ordered the trial court to hold a hearing. *See*
*Lomax v. State*, 153 S.W.3d 582 (Tex. App. — Waco 2004, no pet.). The trial court held the hearing
and ordered the record to be supplemented, while noting that "there's really no reason, no good
reason to think that this record is inaccurate." *Court Reporter's Record*, vol. 18, at 26. The trial
court entered written findings to that effect and ordered the court clerk to provide the appellate court

---

[10] The respondent argues further that these claims are barred from federal habeas review because the last
court to consider these claims rejected them for procedural reasons. *See Ex parte Lomax*, No. 70,589-02 at
173. The court does not disagree, but because the claims are so clearly without merit, they are disposed of
on that basis.

with a supplemented record. Lomax did not complain again about this issue during the course of his direct appeal.

The court of appeals noted that the written statements given by Ingrid Castillo and Elaine Torres were not in the record because "these items were not offered into evidence." *Lomax v. State*, 153 S.W.3d 582, 585 (Tex. App. — Waco 2004, no pet.). The court of appeals noted further that because these statements were not admitted into evidence, they could not be "considered on appeal." *Id.* (citing *Webber v. State*, 21 S.W.3d 726, 731 (Tex. App. — Austin 2000, pet. ref'd). The court of appeals also observed that the accident reports Lomax referred to, Defendant's Exhibit # 67, were in the reporter's record. *See id.* at 585. The state court's findings, which are supported by the record, are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1).

Lomax alleged in his state habeas case that he was denied an effective appeal because the appellate record was not complete. The state habeas court found that Lomax "fail[ed] to demonstrate that he was denied any part of the record to prepare his appeal," or that he was harmed in any way. *Ex parte Lomax*, No. 70,589-02 at 173. The record supports this finding. Lomax had the assistance of appointed counsel throughout the state appellate process, before the intermediate court of appeals and the Texas Court of Criminal Appeals on discretionary review. Although it appears that Lomax submitted several *pro se* motions, indicating that he may have had his own personal copy of at least some portion of the record, Lomax does not demonstrate that the appellate record was actually incomplete or that he was harmed as a result. The record confirms that the statements given by Ingrid Castillo and Elaine Torres were not offered into evidence but that the certified accident reports were offered. More importantly, Lomax does not allege facts showing that, for lack of a complete record, he was denied a meaningful opportunity to present a claim on direct appeal. Absent a

showing that Lomax was denied the ability to present a meritorious claim on appeal, or that the result of his appeal would have been different but for a deficiency in the appellate record, Lomax fails to state a constitutional violation or to show that he is entitled to relief.

### E.     The Allegations of Ineffective Assistance

Lomax alleges that his trial counsel failed to cross-examine a witness about whether "clotted" blood adversely affected the test used to determine his blood alcohol concentration. Lomax alleges that his appellate attorney was deficient for failing to raise on appeal his trial counsel's deficient cross-examination. Lomax's ineffective-assistance claims were rejected by the state habeas court, which found no deficient performance by trial or appellate counsel and no prejudice. *See Ex parte Lomax*, No. 70,589-02 at 175. The respondent maintains that Lomax's allegations do not merit relief under 28 U.S.C. § 2254(d) because he does not demonstrate a constitutional violation or show that the state court's decision to reject this claim was objectively unreasonable.

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at trial. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See id.* at 687-88. To demonstrate deficient performance on his counsel's part, a

petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient. A petitioner must also demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id.*

Lomax was represented during his trial by local criminal defense attorney James Stafford. Lomax maintains that Stafford did not question any of the witnesses or mention that his blood had "'clotted' preventing it from giving an accurate [measure of his] blood alcohol concentration." (Docket Entry No. 6, at 4). The state habeas court observed that, to prevail on this claim on collateral review, Lomax had to "prove by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness" and that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte Lomax*, No. 70,589-02 at 175 (citing *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Narvais v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (citing

*Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The state habeas court found that Lomax did not demonstrate "that his trial counsel's failure to cross-examine witnesses regarding a 'clotted' blood test fell below an objective standard of reasonableness or that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different." *Id.* The state court concluded further that the totality of circumstances showed that Lomax received representation that was sufficient to protect his right to reasonably effective assistance of counsel at trial and on appeal. *See id.*

This record reflects that the state court correctly identified the governing legal standard found in *Strickland* and applied it to Lomax's ineffective-assistance claim. Lomax repeats the same ineffective-assistance claim on federal habeas review. The question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher standard.'" *Knowles v. Mirzayance*, — U.S. —, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 129 S. Ct. at 1420. Lomax's claim fails under this "doubly deferential" standard. *Id.*

Lomax does not point to any evidence showing that his blood was "clotted" or that the test results were tainted in any way. The Fifth Circuit has "made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983)). Conclusory allegations of ineffectiveness are insufficient to demonstrate deficient performance or actual prejudice. *See Day*

*v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).

Defense counsel's cross-examination was a matter of trial strategy. Strategic decisions made by counsel during the course of trial are entitled to substantial deference on federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

There is no basis to find that defense counsel acted unreasonably. Lomax's defense counsel filed a written pretrial motion to suppress the blood test results on the ground of unreliability. There was a lengthy pretrial hearing on the motion to suppress. Defense counsel questioned the State's expert, Dr. Dasgupta, at length about the test results. Defense counsel presented testimony from an opposing expert on the accuracy of the blood test and the reliability of the results. The record confirms that Lomax's counsel also questioned the State's witnesses extensively at trial about the procedures used to test the blood sample taken from Lomax. The record shows that defense counsel

was prepared, knowledgeable about the process used to test blood for evidence of intoxication, and skillfully posed the questions.  Lomax does not indicate what else his counsel could have done to change the trial court's decision on the admissibility of the blood test results.  Absent evidence showing that clotted blood was present in his sample, or that his blood test was unreliable because of some other reason, Lomax does not show that his trial attorney was deficient in any way.

Based on this record, Lomax does not show that he was denied effective assistance of counsel at trial or in connection with his appeal and he does not establish a constitutional violation.  Lomax fails to demonstrate that the state court's decision to reject his ineffective-assistance claims was contrary to, or involved an unreasonable application of, the deferential *Strickland* standard.  Lomax is not entitled to relief on this issue.

Because Lomax has failed to demonstrate a valid claim for relief in this case, his § 2254 petition must be dismissed.

## IV.    Lomax's Motions

Lomax has also filed a motion for leave to amend his petition, a motion for an evidentiary hearing, and a motion for a continuance to conduct discovery.  (Docket Entry Nos. 21, 23, 24).

### A.    The Motion for Leave to Amend

In his motion for leave to amend, which includes a proposed amended petition and memorandum, Lomax presents essentially the same five grounds that were raised in the amended petition he filed on March 30, 2009.  (Docket Entry Nos. 5, 6).  In addition to the five grounds this court has already addressed, Lomax proposes the following new grounds:  (6) he was denied the opportunity to present evidence in the form of 30 certified accident reports and to cross-examine witnesses about the information in these reports; (7) he was denied a "complete set" of trial records

during his appeal; (8) he was denied the opportunity to present evidence consisting of "½ of an accident report, which the State was allowed to enter as prosecutorial evidence"; and (9) the trial court allowed a prosecution expert witness to commit "perjury" about whether the blood-test results were based on valid scientific testing.

Lomax's motion to amend was filed several months after the respondent submitted his motion for summary judgment. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15(a)(2) states that leave to amend should be "freely" given "when justice so requires." The Supreme Court has clarified, however, that a district court need only grant such leave "[i]n the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the other party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Whitmire v. Victus Limited T/A Master Design Furniture*, 212 F.3d 885, 889 (5th Cir. 2000). In that respect, the decision whether to grant or deny a request for leave to amend is discretionary. *See Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999).

The proposed grounds for relief were raised on state habeas corpus review or could have been presented in that application. Lomax was well aware of these claims when he submitted his original and his first amended federal habeas petitions. Lomax provides no explanation for his failure to raise the proposed added grounds for relief in his original or his first amended petitions. His failure to include the proposed added grounds for relief constitutes undue delay.

A review of the proposed claims also shows that the proposed grounds for relief are without merit, making their addition futile.  Grounds 6 and 8 concern evidentiary rulings by the trial court about the accident reports.  Lomax appears to complain that the trial court erred by admitting part of one accident report that the prosecution offered but denying defense counsel's effort to admit certified accident reports covering the same intersection where the wreck occurred.  The state court's evidentiary rulings are governed by state law and do not afford a basis for federal habeas corpus relief.  Lomax has not shown that the trial court's evidentiary rulings were erroneous and he would not be entitled to relief on these proposed new issues.

Another proposed new ground for relief, ground 7, concerns whether Lomax was denied a complete set of the trial transcript on appeal.  But the analysis of the related allegations Lomax already raised do not show that the appellate record was incomplete or that Lomax was prevented from raising any claim on appeal.  Lomax would not be entitled to relief on this issue.

In his final proposed new ground for relief, ground 9, Lomax alleges that the State's expert witness, Dr. Dasgupta, and a medical technologist, Winston Roy Johnson, committed perjury during their testimony about the reliability of the blood test performed at Memorial Hermann Hospital.  Lomax disputes the testimony from Dr. Dasgupta about whether a second test was required to confirm the presence or quantity of alcohol in his blood.  As outlined above, Dr. Dasgupta testified that, although a second test is typically done to analyze drugs in the blood, there is no protocol that requires a second test when alcohol is at issue.  Lomax does not provide any evidence showing that a second test is required to test blood-alcohol concentration.  His unsupported allegations do not demonstrate perjury and do not show a constitutional violation.

The Fifth Circuit has held that it is within a district court's discretion to deny a motion for leave to amend if the amendment would be futile.  *See J.R. Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citing *Martin's Herend Imports*, 195 F.3d at 771; *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir.1994)).  Because the new claims Lomax proposes are without merit, an amendment would be futile.  *See J.R. Stripling*, 234 F.3d at 873 (holding that an amendment is considered futile if the amended complaint would fail to state a claim upon which relief could be granted).  Lomax's motion for leave to amend, Docket Entry No. 21, is denied.

### B.    The Motion for an Evidentiary Hearing

Lomax also seeks an evidentiary hearing on whether his blood test was hindered by "clotting."  Lomax failed to develop facts related to his claims in state court.  Under 28 U.S.C. § 2254(e)(2), if a habeas applicant "failed to develop the factual basis of a claim in State court proceedings," the federal habeas corpus court "shall not hold an evidentiary hearing" on the claim unless the applicant shows that:

> (A)   the claim relies on —
>
> > (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Lomax fails to show that he is entitled to a hearing under this statute.  Nor has he shown that the state court's decision to deny relief on any of his claims resulted in an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).

Whether to conduct an evidentiary hearing is committed to this court's discretion.  *See Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus" proceedings); *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999).  An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims."  *Robinson*, 151 F.3d at 268.  This court has been able to resolve all issues raised by referring to the pleadings, the state court records, including the trial transcripts and exhibits. Lomax's request for an evidentiary hearing, Docket Entry No. 23, is denied.

### C.    The Motion for a Discovery Continuance

Lomax has also requested a continuance to take a deposition.  Lomax filed this request for discovery long after the respondent moved for summary judgment.  The motion for continuance is governed by Rule 56(f) of the Federal Rules of Civil Procedure.  Under Rule 56(f)(2), a court may grant a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken, if the party opposing a motion for summary judgment shows that it cannot present facts essential to justify its opposition.  Lomax provides an affidavit in support of his request for discovery.  He does not show that a continuance to conduct discovery is warranted.

To justify a continuance, a Rule 56(f) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact.  *See Stearns Airport Equip.*, 170 F.3d at 534-35 (citing *Krim v. BancTexas Group, Inc.*,

989 F.2d 1435, 1442 (5th Cir. 1993)). The movant "must be able to demonstrate how postponement and additional discovery will allow him to defeat summary judgment; it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Stearns Airport Equip.*, 170 F.3d at 535 (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)).

Rule 56(f) and the Federal Rules of Civil Procedure in general apply only to the extent that they are not inconsistent with the statutory provisions or the rules governing federal habeas corpus review. *See* 28 U.S.C. *foll.* § 2254, Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts. These rules limit discovery in habeas corpus proceedings. In particular, "Rule 6 of the Rules Governing § 2254 cases permits discovery only if and only to the extent that the district court finds good cause." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000); *see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000). "Good cause" may be found when a petition for a writ of habeas corpus "establishes a *prima facie* claim for relief." *Murphy*, 205 F.3d at 814. Before authorizing discovery, the court must first conclude that the specific allegations in the petition "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Id.* A petitioner's factual allegations "must be specific, as opposed to merely speculative or conclusory, to justify discovery." *Id.* "Simply put, Rule 6 does not authorize fishing expeditions." *Id.*; *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

In this instance, Lomax simply alleges that he needs to take a deposition to seek evidence showing that two of the State's witnesses "committed perjury" in testifying about the reliability of his blood test results. The reliability of this scientific evidence was hotly contested during a pretrial suppression hearing and again at trial. Lomax does not provide the name of any particular witness

to depose or what such a deposition would show. His request is conclusory and falls far short of the good cause showing necessary to permit discovery under Rule 6. Because Lomax's bare allegations are insufficient, the motion for a discovery continuance, Docket Entry No. 24, is denied.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253, a certificate of appealability must issue before Lomax may appeal. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that appeals filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. If denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability on its own, without requiring briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all the reasons

discussed above, this court concludes that jurists of reason would not debate whether the procedural rulings in this case were correct or whether Lomax stated a valid claim of the denial of a constitutional right.  A certificate of appealability will not issue.

## VI.    Conclusion and Order

Based on the foregoing, the petition for a writ of habeas corpus is denied, Lomax's motions are denied, and this case is dismissed with prejudice.  No certificate of appealability will issue.

SIGNED on August 25, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge